This is 414-0495 Andre Calestrov v. Nudo Products. For the appellant, Ms. Hillison, for the appellee, Mr. Anderson, you may proceed. May it please the court and counsel, my name is Keely Hillison and I represent the plaintiff, Andre Calestrov. The court below in this case entered summary judgment on one issue only. The court found that the wind was the sole proximate cause of the injury sustained by Mr. Calestrov. I submit that under the law in Illinois, an act of God, however, such as wind, may concur with the negligent act of a landowner to produce an injury for which the landowner will be liable, and that's what happened in this case. Proximate cause, moreover, is a question of fact for the jury. In this case, there's ample evidence in the record that negligent acts by Nudo Products concurred with the wind itself to cause the injury. So summary judgment must be reversed in this case. What was the negligent act? Well, first of all, Nudo ordered Mr. Calestrov to get his truck out of the building. Mr. Calestrov specifically requested Nudo employees to let him strap and tarp the truck load inside the building. They refused. Now, Nudo's counsel argues that Mr. Calestrov was informed that he could come back later and strap and tarp the load. But that does not appear in the record. And if you look at a few pages of the deposition transcripts that they submitted with their motion for summary judgment, that's not what those transcripts say at all. That is simply the attorney's interpretation of that. And as in summary judgment, always any inferences to be derived from facts must be construed in favor of the respondent and against the movement. So you have Mr. Calestrov's deposition testimony and his affidavit saying that he requested permission to strap and tarp inside the building. He was ordered out. Nudo required him and other truckers to strap and tarp their truck loads before they were allowed to get a bill of lading, before they were even allowed to leave the premises. So Nudo really put Mr. Calestrov... Well, getting back to Justice Connick's question, so by responding no, that was the negligence? Not just by responding no, but by requiring him to strap and tarp the truck load before getting his bill of lading, before leaving the premises, and not allowing him to do it inside. This is something that they allowed on other occasions. For instance, if it was raining or snowing, that Nudo not only allowed truckers to strap and tarp inside, but they required it. And not only did Mr. Calestrov have to go outside to strap and tarp, he had to do it outside because they wouldn't allow him to do it in the building and he couldn't leave the premises. There was nowhere else for him to do it but outside on the premises. And moreover, he had to do it before Nudo's business office closed for the day because he had to go to the business office to get that bill of lading. Without that bill of lading, he couldn't get paid and he couldn't even leave the premises. So that's the negligent act of... those are the negligent acts of Nudo, which combined with the high winds. And Nudo was well aware of the high winds. Not only was it obvious to everyone, they had been blowing all day, but Mr. Calestrov specifically told them, hey it's too windy out, can I strap and tarp inside? So they knew about it. The facts of this case come within the deliberate encounter exception to the open and obvious hazard doctrine. As set forth in the Lefebvre v. Chemline case and the Preece v. Borden chemical case. And in this case, as in the Preece case, placing a burden on the landowner to take precautions against the injury is consistent with public policy of ensuring a safe workplace for people like Mr. Calestrov who are called onto the premises to do a job for the landowner. The landowner has a non-delegable duty to provide a safe place to work. That's what the Preece case says. And are they doing it for the landowner or the recipient of the products? Well, it's the landowner's business. No, I mean, is the truck driver, is his connection with the work being done there that he's doing this for the company or is he doing it for the person who will receive the products when he ultimately delivers them? He's doing it for the company. The company is shipping out its products. And Mr. Calestrov is called in to deliver those products to the customer. But he works for somebody? He's an independent contractor. Independent contractor. That's true. He's not an employee of NUDO, but in these other cases, the injured persons were not necessarily employees of the landowner either. I was really trying to understand it just more from a practical perspective, but I don't know anything about the trucking industry. And for the deliberate encounter exception to the open and obvious hazard doctrine, the court has to consider the same four factors that are considered in all premises liability cases. Reasonable foreseeability. In this case, it was certainly reasonably foreseeable that Mr. Calestrov would proceed to strap and tarp the truckload outside unprotected in the high winds because NUDO simply forced him to do so. Gave him no choice. They required him to strap and tarp. They wouldn't let him do it inside. They wouldn't let him go anywhere else to do so. The likelihood of injury also has to be considered. Certainly, it was likely and reasonably foreseeable that a lone trucker trying to strap and tarp a big flatbed truck full of products was going to be blown off in these high winds. NUDO knew about the high winds. And it was certainly reasonably foreseeable that someone trying to handle a tarp high atop a truck in high winds was going to catch the wind like a sail and blow him off. In fact, he was blown off and fell far down. It was high from the top of the truck down to the ground. Why is it foreseeable that he would choose to do that in the face of the inclement weather rather than wait to do it inside? Well, first of all, he did not know that he had an option to wait and do it inside. Because your thought is that that wasn't really conveyed to him. That wasn't conveyed to him. And I would ask you to look at the pages of the record wherein the depositions of NUDO's employees appear. Specifically, pages 271 through 274, you'll see that those employees never say in their deposition that they informed Mr. NUDO that he could come back later and strap and tarp. And you have Mr. NUDO's own affidavit at pages C-53 to 56 of the record. And Mr. NUDO's, I'm sorry, Mr. Flestrow. Mr. Flestrow's affidavit at his deposition transcript between pages 160 and 164 of the record wherein he says he was not informed that he could come back later. He was just told he can't do it. Can't do it inside, ordered to get his truck out. So they may have had a policy of allowing people to come back later, but they did not convey that to Mr. Flestrow as far as he knew. He had no choice. And since NUDO required him to strap and tarp, he had no alternative. He couldn't very well just leave the truck there and hitch a ride back home. Would one strap and tarp and then it would be inspected before the bill of lading would be given to the driver? That I don't know. I don't think that came out in the record. But it is in the record that NUDO would not give a bill of lading to the trucker until the truck load was strapped and tarped. I believe the strapping and tarping procedure only pertains to flatbeds such as the kind that Mr. Flestrow was driving. And there's no evidence in the record that there were any other flatbeds at NUDO on this day. There's no evidence as to how many flatbed trucks NUDO deals with on any given day. How long does it take to strap it down? That depends on who you ask. Mr. Flestrow testified, I think that it would be, I don't remember the exact number, but he may have said something like 15 minutes. And there was an argument by NUDO that it would take an hour or two. And I'm not sure exactly where in the record that is. What kind of products were on the truck? I'm sorry, I don't recall the kind of product. Okay. Another factor, third factor that the court has to consider is the magnitude of placing a burden on the landowner to guard against the injury. And in this case that burden would be minimal. This is a procedure, all Mr. Flestrow was asking for is a procedure that NUDO already had in place for rainy and snowy days. Whenever it rains, whenever it snows, NUDO not only allows but requires truckers to strap and tarp their loads inside that same building before they even leave the building. So it's obviously very doable for them and is not going to break their business as they argue. And moreover, this is not a mom and pop shop that's going to fold a little extra burden. NUDO's own affidavit in the record shows that this is a big business that's got sales revenues of over $60 million a year. There's no evidence that requiring NUDO to allow strapping and tarping inside on a few days out of the year that are windy would be any significant burden on top of what they already allow on rainy and snowy days. And again, there's no evidence to show how many flatbed trucks they're dealing with. Since it's only the flatbed trucks that require the strapping and tarping. Another thing that the court has to consider is the consequence of placing the burden on the defendant landowner to protect against the injury. And in this case, in cases such as this, the only person who could protect against this injury would be the landowner. The truckers can't protect themselves against this. If the landowner says, sorry, you have to take your truck outside and strap and tarp outside regardless of the weather, regardless of if it's raining or snowing or lightning or a tornado, there's really nothing the truckers can do about it. They can't protect themselves. They have nowhere to go. Only the landowner can protect against this injury. And the danger of serious injury is obvious. In this case, there was a very serious injury. Mr. Kolesarov crushed both of his heels, requiring surgery on both heels, broke his right arm, he had over $100,000 in medical bills, and wasn't able to work for five months. It was very foreseeable that being blown off or even slipping off the top of the truck while trying to strap and tarp it would cause very serious injuries, as it did in this case. There's clearly evidence in the record to show that there was negligence by Nudo, which concurred with the Wins, to cause this accident and to cause Mr. Kolesarov's injuries. So I'd ask that you reverse the summary judgment and remand this matter for further investigation. And the record is absolutely clear that your client did not know that if he waited a certain amount of time that he would be allowed to come back in and strap and tarp it. I believe it is. I think he says in no uncertain terms on his affidavit, pages 53 to 56, that he was told that he couldn't. His request to strap and tarp inside was refused. He was ordered to take the truck outside. And I think if you look, actually read the deposition transcript, it's very clear that Mr. Kolesarov has a bit of a language problem. And some of the questions and answers are simply not what Nudo makes him out to be. And again, any reasonable inferences have to be construed in favor of the respondent, which is, in this case, Mr. Kolesarov. So if there are no further questions. Thank you. Thank you. Mr. Anderson. Good afternoon, your honors. I may please the court, counsel. Tyler Anderson for Apelli Nudo Products, Inc. The essence of the plaintiff appellant's case relies on the premise that Nudo has a legal obligation to allow truckers access to its facility at Nudo's expense upon the trucker's request. No such legal obligation exists. Further, the condition at issue is a natural condition. It is not a premises defect. Nudo did not cause any hazard on its premises. And Nudo had no control over Mr. Kolesarov in this case. He was an independent contractor. So in accordance with the appellant's argument that Nudo had an obligation to allow Mr. Kolesarov to strap and tarp his trailer inside, that just simply isn't the case. Nudo was busy that day. There was a lot of trucks. It's evident in the record at page 161. It's also evident in the record at pages 216 and 274 that if a trucker believed that it was not safe to strap and tarp their load outside, that if they notified the warehouse employees, they would work them into the schedule when time allowed. Nudo employees did not tell Mr. Kolesarov he could never strap and tarp his trailer inside. At the time he asked the Nudo employees to strap and tarp his trailer inside, he was being weighed on Nudo scales. They have one scale. And so this would have taken up the scale for all the other trucks waiting to be loaded and to go out that day. So they told them to pull out of the scale area and then potentially, if it was too hazardous to strap and tarp his trailer outside, he could come back in when the schedule allowed. Wait a minute. You say he was told that? No. Well, the Nudo employees say that if a trucker tells them it's too hazardous. It's not clear whether he was actually told that. But he does say that he did not expect to tarp inside. He says he usually tarps outside and he doesn't expect anything because it depends on the company. So there's no expectation or duty that these companies have to allow truckers to strap and tarp their trailers inside. Well, I get that, but counsel's argument was basically this guy doesn't know that he's going to have a chance later on, perhaps, to either strap outside when the wind dies or pull back in so it's safe to do that. But she says that he can't leave the plant or the premises until he is strapped and tarped. If that's correct, doesn't that place some obligation, liability on your client? No, Your Honor, and the reason is the condition we're talking about here is hazardous wind conditions, and it's open and obvious to everyone, as counsel admitted. Everyone knew it was dangerous. So Nudo had a reasonable expectation that he would protect himself. If it was too dangerous, he wouldn't participate in a very dangerous activity. Well, what I'm getting at is if he doesn't know he can pull back in to do it where it's safe, he's just supposed to stay there all night if it takes all night for the wind to die down? Not necessarily, Your Honor, although the record indicates he could have, as he stayed there the night before in preparation. But the point I'm trying to convey is that if he felt it was too dangerous outside to strap and tarp his load, even if he didn't know that he could go back in, he could have went and asked somebody and said, hey, it's really dangerous, it's really windy out here, is there any way you can work me in? And then had they said no, maybe that argument would hold more weight. But that never occurred. And further in the record at, let me double check my citation, at page 158 of the record and 169, it indicates that Mr. Kolesroff was not under any strict deadline to deliver these products, and he said he didn't have time to wait. And when asked why he didn't have time to wait, he said, I wanted to work, not wait. Now, as an independent contractor driving these products, his time is important because he can get back and get to the next job. And that's the underlying issue here, is he didn't want to wait a couple hours or overnight because his time is his money, and I understand that. But that doesn't mean that NUDO has to absorb the expense of stopping their operations in order to accommodate his business interests. And as I stated before, the hazardous conditions, the winds, were open and obvious to everyone, which means that under Illinois law, if there's an open and obvious condition, the defendant, premises owner, is generally under no duty to remedy that condition unless the deliberate encounter exception applies. And for that exception to apply, there has to be some compulsion. And what the appellant has relied on is the economic compulsion in Lefevre and has relied heavily on the Lefevre case. And that case is distinguishable on its facts. In Lefevre and Preeze both. In Preeze, the landowner, premises owner, actually gave the employee a ladder that was coated in resin, and he fell because the ladder was coated in resin. Here, NUDO did not provide Mr. Kolesroff with any tools, didn't tell him to strap and tarp his truck at any particular time or in any particular way. In the Lefevre case, the strewn edge trim, which was the hazard, was created by Chemline Company. Their employees spilled the edge trim, and Banner employees had continually complained about the strewn edge trim, and it created a hazard over a long period of time. And that's not the case here. There's no premises defect created by NUDO products. And further, NUDO had no control at all over Mr. Kolesroff's employment, as shown in the Camp v. TNT Logistics 7th Circuit case. In that case, the TNT Logistics could have, according to the 7th Circuit, called the trucking company and asked the trucking company not to contract with the plaintiff for TNT jobs in the future. And the 7th Circuit said that that's not enough to create an economic compulsion under the deliberate encounter exception. Here, it would be even less of an impact, because even if NUDO would have called Unique Trucking and asked not to use Mr. Kolesroff in the future, Mr. Kolesroff testifies in the record that the overwhelming majority of his jobs were those in which he could pick up his load in Chicago. And he took this job only because Chicago was in a dry period. So there's really no effect NUDO could have had on his employment in accordance with the case law and reality. Mr. Kolesroff contracted with Unique Trucking, not with NUDO. And as such, there was no duty. NUDO had no duty. But even if going to the trial court's order or summary judgment, in order to prove proximate cause, you need cause in fact and legal cause. Now, for cause in fact, Mr. Kolesroff admits that nothing other than the wind caused his fall. Nothing NUDO did caused his fall. He says that in his deposition, only the wind. So there's no – NUDO had no control over anything he did, when he had to do it, any tools he used. So there's no cause in fact. NUDO simply created a condition in which Mr. Kolesroff was injured. And his own actions and the forces of the wind were superseding causes to the condition created. And going back to a few facts that the appellant has relied on. First, the appellant argues that because NUDO allows truckers to strap and tarp their trailers in rain and snow, that they should have allowed the same courtesy in the high winds. And the rationale behind the rain and snow inside is because NUDO sells wood panels and floor panels. So if they get wet, they get damaged. And it's just not economically viable for every time it rains or snows in Springfield for NUDO's shipped products to be damaged. And that's the reason that they allow that. Secondly, in the record at pages 162, 163, 167, and 181, Mr. Kolesroff discusses the amount of time it takes to strap and tarp a trailer. And the strapping phase takes about 15 minutes. But the entire process takes between one and two hours, according to his own testimony, which means he would have held up the scales at NUDO's facility for one to two hours if he were allowed to strap and tarp the load indoors, as the plaintiff says. So the fact that NUDO is not willing to absorb the expense and hold up its operations for one to two hours is not a negligent offense. And therefore, NUDO Products respectfully requests this court to affirm judgment below. If there are no further questions. Thank you. Rebuttal? Counsel argues that, well, once Mr. Kolesroff realized that, hey, it's windy out here, I might get hurt if I strap and tarp outside. He could have gone back into NUDO and asked someone, hey, can I strap inside because it's windy out here? Well, he already did that, and they refused him. How many times is he required to ask? How many times is he required to tell them, hey, it's dangerously windy out here. I need to strap and tarp. I need to strap and tarp inside. Counsel also argues that there's no economic compulsion on Mr. Lestroff to strap and tarp his truck and get on with the trucking. However, the Preece case says that economic compulsion is not necessary in order for there to be a deliberate encounter exception to the open and closed door. For the deliberate encounter exception. Counsel relies upon the Camp versus TNT case to argue that there is a requirement for an economic compulsion. But the Camp case is a federal case. The Preece case, on which I rely, which counsel cited in his brief, is an Illinois appellate court case, which should apply. Counsel admitted in his closing, and rather in his argument, that Nudo created conditions in which Mr. Lestroff was injured. I believe those were his words. I think that's sufficient to show proximate cause, their own admission. Nudo created conditions in which Mr. Lestroff was injured. How did they create that condition? By requiring him to strap and tarp outside and requiring him to do it before he could leave the premises. Counsel argues that there was no room on the scales to strap and tarp this particular truck, or any truck, because they were too busy and they had other trucks that had to be weighed. There's no evidence in the record that showed that the trucks had to be strapped or tarped on the scales. This is a big building. Trucks drive in there.  The Nudo employees load the products on top of the truck. Then the truck is driven inside the building, over to the scales, where the Nudo employee weighs the truck. If it's overweight, as it was in this case, the Nudo employees then remove some of the products from the truck. There's no evidence that this building had nowhere for these trucks to go. Again, no evidence that there were any other trucks that were waiting to be strapped and tarped inside. No evidence that there were any other flatbed trucks that they were dealing with on this day. The only one who could have done anything to prevent this injury was Nudo. Nudo could have allowed Mr. Kolesdrov to strap and tarp inside. At a minimum, Nudo could have informed Mr. Kolesdrov that he had the option of waiting until they were done for the day and come back and strap inside. They didn't tell him that. So they had a duty of care. They breached that duty, and that Nudo's negligence was a concurrent, proximate cause of the injury. So we ask that the summary judgment be reversed. Thank you. Thank you, counsel. We'll take the matter under advisement to wait for readiness in the next case.